# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| JAE MYUNG PAK, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. WDQ-10-1982 |
| | | Related Criminal Action No. WDQ-92-49 |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## MEMORANDUM OPINION

Pending is Jae Myung Pak's petition for writ of error coram nobis. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the following reasons, the petition will be denied.

**I.    Background**

Pak, a native of Korea, entered the United States in 1982 as a lawful permanent resident and has lived here since. Pet.'s Mot. 2. In 1992, he pled guilty to conspiracy to interfere with commerce by threats or violence in violation of 18 U.S.C. § 1951. *Id.* In his plea, Pak admitted that: (1) he and his accomplice confronted their victim outside a night club and demanded $5,000; (2) he threatened the victim with a handgun; and (3) he pointed and fired the gun at the victim. Pet.'s Mot., Ex. F at 28. The victim was hospitalized and treated for head wounds. *Id.*[1]

Pak was represented by Robert Harvey, Esquire. *Id.* Pak states that Harvey did not advise him of any immigration consequences before he pled guilty. Harvey has no specific recollection of what he told Pak, but states that it was not his "general practice at the time to advise clients of the potential immigration consequences flowing from their court cases." Robert Harvey Decl. ¶ 5.

---

[1] It is unclear whether the wounds were caused by a bullet or a blunt object. Pet.'s Mot., Ex. F at 28.

On November 19, 1992, Pak was sentenced to three years incarceration and two years of supervised release. Pet.'s Mot., Ex. F at 3.[2] At sentencing, Harvey did not request a judicial recommendation against deportation.[3] When Pak was sentenced, an alien could be deported for a crime of violence only if his sentence was five years imprisonment or more. *See* 8 U.S.C. § 1101(a) (43)(F) (1991). The law was later changed to allow for deportation for sentences of at least one year imprisonment. *See* 8 U.S.C. § 1101(a)(43)(F) (2006).

On February 9, 2009, the Department of Homeland Security began removal proceedings against Pak, charging him as removable under 8 U.S.C. § 1227(a) (2) because of his 1992 aggravated felony. Pet.'s Mot., Ex. D at 1. On July 14, 2010, Pak filed his petition for writ of error coram nobis. Civil No. 10-1982, ECF No. 1; Criminal No. 92-49, ECF No. 14. When he filed his petition, Pak had completed his sentence for the 1992 charge.

## II.     Analysis

Pak argues that he is entitled to coram nobis relief because Harvey's counsel was ineffective. Pet.'s Mot. 1-2. Pak contends that Harvey was ineffective because he failed to: (1) warn Pak of the immigration consequences of his plea, and (2) request a judicial recommendation against deportation. *Id.* Pak contends that had Harvey been effective, he would not have pled guilty, and the government would have moved for the judicial recommendation because of Pak's substantial assistance. *Id.* at 3-4.

---

[2] At sentencing, the government moved for a four-level reduction for cooperation and substantial assistance under U.S.S.G. § 5K1.1.

[3] The statute governing judicial recommendations against deportation, then codified at 8 U.S.C. § 1251(b) (2), was later repealed.

A. **Standard of Review**

1. **Writ of Error Coram Nobis**

Federal courts may grant relief from a conviction by writ of coram nobis after a petitioner has completed his sentence. *See* 28 U.S.C. § 1651 (2006); *United States v. Morgan*, 346 U.S. 502, 512-13 (1954). "Traditionally, the writ is available only to remedy factual errors material to the validity and regularity of the legal proceeding itself." *United States v. Bazuaye,* 399 Fed. Appx. 822, 823 (4th Cir. 2010) (internal quotation marks omitted). It may be granted "in light of a retroactive dispositive change in the law," which undermines the basis for a prior conviction. *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988). Coram nobis relief is an "extraordinary remedy," *Morgan,* 246 U.S. at 511, and should issue "only under circumstances compelling such action to achieve justice," *Mandel,* 862 F.2d at 1075.

To secure the writ, a petitioner must demonstrate that: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Bazuaye*, 399 Fed. Appx. at 824 (citing *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir. 1987)).

2. **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). Under *Strickland's* two-part test, Pak has the burden of proving that: (1) counsel's deficient performance (2) prejudiced his defense. *Id.* at 687; *United States v. Luck,* 611 F.3d 183, 186 (4th Cir. 2010).

Deficient performance requires Pak to demonstrate that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at

3

686, 689. This standard of review is "highly deferential," and there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance". *Id.* at 668. To demonstrate prejudice, Pak must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id*. at 686.

**B.     Pak's Petition**

Pak relies on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), to support his claim that Harvey was ineffective for failing to advise him of his plea's immigration consequences. In *Padilla*, the Supreme Court held that "counsel must inform [his] client whether his plea carries a risk of deportation." *Padilla,* 130 S. Ct. at 1477. Pak argues that *Padilla* should be applied retroactively to his case because: (1) it did not announce a new rule of law, and (2) it simply requires "observance of those procedures that . . . are 'implicit in the concept of ordered liberty.'" Pet.'s Mot. 5-6 (*quoting Teague v. Lane,* 489 U.S. 288, 307 (1989) (citation omitted)).

A Supreme Court decision does not apply retroactively if it creates a "new rule" that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague,* 489 U.S. at 301. The Fourth Circuit has stated that "nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review." *United States v. Hernandez-Monreal*, 2010 WL 5027195, at *1 (4th Cir. Dec. 6, 2010) (unpublished). At least one district court in this circuit

has held that *Padilla* is not retroactively applicable. *Doan v. United States,* --- F. Supp. 2d ---, 2011 WL 116811, at *2-3 (E.D. Va. Jan. 4, 2011).[4]

Here, the Court need not reach a decision on *Padilla's* retroactivity because—even if *Padilla* applies—Pak has not shown that Harvey's failure to advise him of the immigration consequences was unreasonable. Unlike the petitioner in *Padilla,* Pak was not at risk of deportation when he pled guilty. When Pak entered his plea, the statute governing deportation for aggravated felonies applied to individuals sentenced to "a term of imprisonment [of] at least five years." 8 U.S.C. § 1101 (a) (43) (F) (1991). In 1992, Pak's sentence of three years imprisonment and two years of supervised release did not qualify him for removal. *See id.; United States v.Work*, 409 F.3d 484, 489 (1st Cir. 2005) (supervised release is separate and independent from the term of imprisonment). Harvey's failure to warn Pak of consequences that did not exist, or unnecessarily move for a judicial recommendation against a deportation, was not objectively unreasonable.[5]

Further, Pak's argument that his guilty plea "actually caused the legacy Immigration and Nationality [sic] Service ("INS") to initiate proceedings against him in 1993" fails because those charges were dropped 18 years before Pak sought redress by filing this petition. *See* Pet.'s Mot., Ex. F. Coram nobis petitioners must demonstrate that "sound reasons exist for failure to seek appropriate earlier relief," which Pak has not done. *Morgan,* 346 U.S. at 512. And, to the extent Pak argues that Harvey should have advised him that his plea would prevent him from: (1) reentering the country should he choose to leave, or (2) filing for U.S. citizenship—which were consequences of the plea when it was entered—Pak has not explained his delay in challenging

---

[4] *But see United States v. Chaidez,* 2010 WL 3184150 (N.D. Ill. Aug. 11, 2010) (applying *Padilla* retroactively).

[5] In *Padilla*, counsel failed to explain to his client the risk of deportation, which was explicitly stated in the immigration statute. 130 S. Ct. at 1483.

Harvey's failure. Pet.'s Surreply 2-3. Pak has not shown that he is entitled to coram nobis relief. His petition will be denied.

**III.     Conclusion**

For the reasons stated above, Pak's petition for writ of error coram nobis will be denied.


<u>March 31, 2011</u>                                                                 _____/s/_____
Date                                                                                          William D. Quarles, Jr.
                                                                                                   United States District Judge